Good morning, Your Honors. Matt Larson of the Federal Defender's Office for Mr. Gonzalez. Your Honors, this case is controlled by Whitney. In both cases, the government promised in the plea agreement to urge a low-end sentence. And in both cases, the government indeed uttered those requisite words, but then breached the agreement by implicitly arguing for a greater sentence than the terms of the agreement. Mr. Larson, help me with this analysis. Judge, was it Wu or King? I can't remember which one. King. In this case, basically said, I'm not going to accept this plea until I see the pre-sentence report. Then when the parties came in, he announced, based on what I see in the pre-sentence report, I am not going to accept the 11C1C. Therefore, you can either replete or you can go to trial. At that point, did that relieve the government of its contractual obligation once the district court announced it was not going to go along with the stipulated sentence? By then, Your Honor, the government had already breached the plea agreement by filing its sentencing memorandum, which followed shortly after the PSR. And that's our argument here, that it's the submission and the sentencing memorandum that breached the agreement. The sentencing memorandum is devoted essentially entirely to Mr. Gonzalez's criminal history. It walks the judge through the process of it in exactly the same way that the government did so in the Whitney. I found that in the probation officer's report. And the court essentially mimicked the wording of the probation officer's language when he announced that he wasn't going to accept the plea. Essentially mimicked both the language of the PSR and the government's memo. But when Judge King originally said, I'm not going to accept this plea at the outset, then he had nothing from the government at that point. Your Honor, he had. Before that point, the government put in its sentencing memo. Before he sent a memo. Yes, Your Honor. It's critical here. The way it worked is Mr. Gonzalez came in. He pleaded guilty. The agreement was proffered. Judge King accepted the guilty plea. But he said, I'm going to wait to accept or to decide on the plea agreement until I have sentencing submissions. Wait a second. I thought that the way this works is the probation officer circulates a draft of the pre-sentence report to the parties before they submit their sentencing memos to the court. Did that not happen in this case? That did. The PSR was put in on the 31st of October. And three days later, the government put in its sentencing memo. So my question is, was the language in the PSR that you and I are focused on in the draft before the government ever filed its sentencing memorandum? Or was that a change to the PSR, a revision that occurred after the government filed it? Certainly, both the government's sentencing memo and the PSR recited Mr. Gonzalez's criminal history. Now, that's not my question. Mr. Larson, was the language in the pre-sentence report that you're objecting to before the government had filed its sentencing memorandum in the draft PSR or not? Yes, the draft PSR containing the criminal history was filed three days before the government's sentencing memorandum. And the critical point here is that, as Whitney holds and as other cases hold, where there isn't a plea agreement in which the government promises to urge a low end, its reciting information that is already before the court via the PSR can be a breach. But your answer to my question, I think, was inaccurate. What I asked you was, at the time, Judge King decided not to accept the plea until he got the pre-sentence report. To accept the plea but not the agreement. Did he have anything from the government then? No. I apologize. I misunderstood your question. I thought you were asking about when he rejected the plea agreement. So, in other words, but doesn't that suggest he was already disquiet? That he was already? Disquiet. The judge? Yes. About Mr. Gonzalez? In other words, he was uncertain. He had no information. But he said he wasn't inclined to go along with it. No, not at that point, Your Honor. When Mr. Gonzalez came in to plea guilty, he said, I'm accepting the plea, but I have no information at this point as to whether the recommended sentence is appropriate. So I want to get a PSR. And this is a common practice in the Central District. Judges will often take the plea and then order a PSR, either a full one or one simply limited to criminal history, and then decide whether that the recommended sentence is appropriate in that case. And was your office representing Mr. Gonzalez Aguilar in this matter? It was. Not myself. Yeah, but what objections were made by your office at each step here when the first document came in? Did you object? We did not object. The plea agreement had been breached. And for that reason, the review here is for plain error. But the language and the facts were essentially the same as what was said later on, right? You mean this was criminal history? Yes. The recitation, yes. There was different language in the government's memo talking about how he continues to thwart the law and shows no signs of stopping. This was not in the PSR. But let's assume for a moment that there was a sufficient – I'm most disturbed by the rhetoric in the government's document, not by them reciting what was already in the pre-sentence report, but there was some rhetoric in there that seemed a little off-kilter. But then what? Judge King seemed to spend a great deal of time thinking this through. And if anything, he was annoyed with the government for being too lax, not for being too strict. Yeah, for being too lax. And your position is, well, he might have – the explanation for why he did this is he could have gone and sometimes does go below the recommendation, but he also could have and sometimes does go above the recommendation. And in this instance, he seemed – I'm asking a prejudice question is what I'm asking. Yeah, right. What doesn't make it any different, given the degree to which Judge King seemed quite disturbed by this person's history, the facts of the history, and not relying on the government's representation, in fact, decrying the government's for even going along with this to begin with? Well, Your Honor, I think on the prejudice question, we have to look to the colloquy in which the judge decided not to accept the free agreement. Right. And that was after the government had put in its sentencing memo. And at the colloquy, the judge said he recited the same criminal history that had been highlighted in the memo. And he said, you know, as the government had said, Mr. Gonzales has an extensive string of crimes. And the judge said Mr. Gonzales has an unbroken string of violations of law. The government highlighted the fact that he was selling drugs and involved in crimes involving weapons. The judge said he has repeated drug-dealing offenses and weapons possession. But there was also the colloquy at the time of the actual sentencing. Yes. When Judge King seemed completely committed to a higher sentence, for a wide range of reasons, some of which were not these reasons. At that point, Your Honor, the bill had already been wrung. Well, yes and no. I mean, it suggests, yes, it had already been wrung, but his general attitude at that point suggests that he was not being led around by anybody's representation of the situation, that his problem was that he thought that the government was being too lax. The question here is whether there was a reasonable likelihood that what the government did affected the judge's decision, right? And I'm having a hard time agreeing with you in looking at page five of the initial pre-sentence report and the two paragraphs that the probation officer wrote under the section that's captioned, Respect for Law. It was the probation officer who rang the bell the first time here in the chain of events, and he sets out the 15 criminal convictions. He says that criminal history category five may not adequately account for the seriousness of the prior record. And then he goes on to say, in addition to more than two decades of criminal conduct, he's had multiple removals, and it's clear that he lacks respect for the law in the United States. I mean, that's clearly what's bothering the judge here. And how can you show that the government's statements three days later and in the courtroom, which say exactly the same thing that the probation officer first said, would have made any difference on this record to Judge King? Because, Your Honor, that's exactly what Whitney says. The violation in Whitney was the same here, right? What happened in Whitney? The prosecutor cited just one of the defendant's supervised release revocations, and he said, well, this shows that the person is, in fact, a good thief, okay? Based on that, this court said you breached your promise to urge a low-end sentence, and why? But that was because his lawyer got up and said at sentencing, you know, my client is basically just a petty thief. And then the prosecutor said, well, I've got to correct the record on that. Importantly, Your Honor, it was not a correction of the record. It was response to argument by counsel. But Whitney was careful to say the government did not correct any factual inaccuracy by responding to counsel's argument. Again, the context of this is very important. Here we have a binding plea agreement where the government says it's going to urge the low end. Well, it's not a binding plea agreement if the district court announces that I'm not going to accept it because I think the parties have negotiated a sentence that is too low, given the nature of this man's criminal record. This is not the normal case where each side is free to argue what it wants and recommend what it wants. But here we have... But you're... Excuse me, counsel. If I understood you correctly, you agree that there is nothing that explicitly violates the plea agreement. You're saying by implication. It was the tone of what was said, the way in which it was said. They didn't come out and say, we disagree with the sentence that we agreed to in the plea agreement. It's all by implication, right? Exactly the case in Whitney, Mondragon, Johnson, Camarillo, Tello. The government technically says, yes, 46 months. And it does all of these things to implicitly say why 46 months is not an appropriate sentence and the sentence should be stronger and longer. And why? Because the government walks the judge through his extensive string of crimes, fully documented in the PSR. And Whitney says, when the information is already before the court in the PSR, when the government then harps on it in the context of a promise to urge a low end sentence, that's a breach. Was we talking just about a written document or was it the argument? The written document, Your Honor. In Whitney, I thought it was the argument. Oh, I'm sorry. In Whitney, that argument, yes. Here, the argument. Here, there was no argument because as soon as they walked in, he said, I'm not going to accept it. I'm not doing it. And that's what troubles me about your argument. It's the point that Judge Talman made, is that right from the get-go, Judge King seemed to say, this isn't enough. And they were not going to accept this. So at that point, you have a real question about whether the plea agreement even survived. But even if it does, the reality is, can you blame the government for reciting what was in the pre-sentence report, not saying there's anything more or saying, we want you to sentence him to 2X instead of the X we agreed to? Right. It's a little hard to derive implication from this because there are several reasons why doing what they did just helped the judge make up his mind. For example, in the 3353A, 3553A factors, for example, all perfectly innocent explanations. Just to respond to both of those points, if I may. First, I want to be sure that the facts are clear in this case. When the parties went in to plead guilty, the judge said, I'm accepting your plea, but I need to look at a PSR and sentencing papers before I decide. Then the government puts it in sentencing memo, which we say is a breach. After that, the judge comes in and says, I'm not accepting this because I think it's too immediate. What should the government have done or what does the government usually do under these circumstances? Should they have filed no sentencing document or should they have said that even though this person has this very long string of criminal history that this is a good sentence, it's because of the direction in which they wrote it or is it because of the rhetoric or is it because they recited the facts or what exactly? What the government should have done in this response to the second question is say, we believe that 46 months is appropriate. We refer your honor to the PSR, period, end of submission. This is not the normal case. If that is what they did, to me, as I said at the outset, my problem is with the rhetoric, but aside from that, that's exactly what they did. They just said it all again. Extensive string of crimes, extensive criminal history. Yes, that's what I'm calling the rhetoric, but aside from that, the part about just saying he did this, he did that, he did this, he did that, which is just reciting what's already in the PSR, how could it matter if they're just saying the same thing again? Because the rhetoric, first, it wasn't just saying the same thing because it was also editorializing and making ad hominem remarks about the defendant in the same way that the government did so in Whitney. How can it be editorializing if it is simply repeating virtually verbatim what the PSR author said? And again, I want to be clear. In the normal case, the government is free to editorialize, but in a case where the government agrees in a plea agreement to urge the low end, it is strictly bound by that promise. And we have a long line of cases saying this. And that's why Whitney says, even when there's technical adherence, if we see other activities- You still have to find that the government's comments prejudice you. Indeed. And if we conclude that Judge King had already decided that this was just unacceptable to the court, then you can't show that whatever the government said influenced the court in its determination. There is no evidence on which one can say he either would have or would not have accepted the agreement. We know nothing about his inclinations. He told you from the get-go that he was inclined to impose a far more severe sentence. That was after the government put in its memo, Your Honor. It was not from the get-go. It was after the government put in the memo that we're saying breach the plea agreement. At the plea colloquy, he said, I don't know anything, so give me your sentencing papers. All right. Thank you very much. We'll give you a minute in rebuttal. Thank you. Good morning. My name is Michael Doerr, and I represent the United States. There are two citations to the record that I think function as effectively tent poles for my argument as to why there's no plain error here. The first is government's excerpt of record, page two. And the second is the excerpt of record, page 59. Government's excerpt of record, page two, comes from the defendant's own sentencing position that was filed in this case. And in that statement, in that brief, defense counsel makes the point that in the plea agreement, Mr. Gonzalez-Aguiar agreed not to argue for a sentence other than the one agreed to therein. The following five pages include a long, extensive discussion of Mr. Gonzalez-Aguiar's upbringing and problems that he faced along the way. And concludes on the final page with the statement that Mr. Gonzalez-Aguiar therefore respectfully requests that the court impose the proposed sentence of 46 months. So I think that this should be looked at in a broader context than strictly what the government did. This is a fast-track program. And to the extent that these are interpreted, these plea agreements are interpreted according to contract principles. I think course of dealing, course of performance, usage of trade are contractual principles that would apply here. But were these documents exchanged simultaneously or sequentially? No. The government submission was on November 3rd. And the defendant's argument was thereafter. It was November 14th. Though I would, there was no indication in that defense filing that it was responding to the government's position. In fact, it included letters from family members of the defendant that predated by weeks and months the government's submission. And in fact, frankly, this is regular practice in these sorts of cases. These are regular players, the U.S. Attorney's Office and the Public Defender's Office. And these cases, you get these sorts of positions which list out characteristics of the defendant and effectively end up at that same point. They push down and say that this should be the number. And my statement, and I will certainly address the rhetoric, Your Honor, was effectively pushing up to that 46 months. The second- So it's your position, and I gather this as well from the record. You were simply trying to buttress, not increase, the 46-month period. Is that right? That's absolutely right, Your Honor. And I would direct the Court to the government's excerpt of record, pages 23 through 26, which is a supplemental- The problem is that in the current atmosphere of rather high sentences, to say that somebody had an extensive string of crimes, use of alias, and failure to appear demonstrate that it's appropriate. And then to say later that, in short, despite his many past sentences, terms of probation, five deportations, he continues to flap the law and shows no signs of stopping. And then to say that you get a 46-month sentence seems somewhat disconnected. And that a 46-month sentence in the current world is not a very high sentence. Well, Your Honor, a 46-month sentence in these 1326 cases is a high sentence. And we cited two cases from Judge King where he had given a lower sentence. Mr. Larson cited two where he went above. He went up. And in fact, in this case, he so indicated at the sentencing. At the sentencing after. A couple of points on that, though, Your Honor. At this point, obviously, in the pre-sentence report, there was a letter that had been submitted by defense indicating that the only reason why the defendant had come to this country was to care for his sick mother and to find his 10-year-old kid. Juxtaposed against the criminal history. And I take full responsibility for what Judge Berzon, you've described as my rhetoric. Frankly, I just, I'm looking at a guy with six Social Security numbers, this criminal history, and he's telling the probation officer he's coming in to care for his sick mom. Let me ask your help on something. I gather it's the government's position that the defense really didn't object specifically to what was submitted to the judge, except now on appeal. Is that correct? Your Honor, they didn't object at all. At all. So the standard of review for us is what? Plain error? Is that what we're looking at? Your Honor, it is plain error. But I would allude to a quote from Puckett in the defendant's reply brief where it said, Puckett was distinct because no one has argued that the defendant had waived or abandoned his claim. I think that's what they did here. This is not a missed objection where defense is leaning over and talking to their client while someone asks an objection or question, or missing a motion to dismiss for post-indictment delay. The whole issue here was the sentence. And the filing by the defense, government section of the record, page 31, says, as stated in the USPO's recommendation letter and in the government's sentencing memorandum, a fast-track sentence of 46 months is consistent with other defendants who have the same level of criminal history and would not create any unwarranted sentencing disparities among similarly situated defendants. It then, quote, it cites the probation officer's report in my sentencing memo. So the only reference to anything that I had done was in saying that we were all on the same page here. There was a second reference where there was an objection at the first hearing in, I believe it was November, when Judge King asked defense counsel if you had any objections to the sentencing position papers, you would make them. And that's page, I'm sorry, I believe that's 53 of the excerpts of record. But there was, I did make a mistake in my position when I had said that the defendant had a failure to appear. And the defense corrected that and said, look, he was incarcerated. He was detained at that time. And I said to Judge King, you know, Your Honor, I was wrong. And before I could finish the sentence, he said he wasn't relying on that. And so that speaks to the second point, which Judge Berzon had already referenced, page 59 in the excerpts. Judge King was in clear control here and has a wealth of experience with these 1326 cases, which certainly dwarfed mine. And so to say that there was a reasonable probability that what I said would impact what he did here, I think isn't true. And you can look to the, one of the sentencing positions that was, judicial notice was taken of that Davalos case. It was Exhibit 8 or JN. The sentencing position there is pretty similar to mine. But what does the defense have to show, again, thinking of the plain error concept, even if it's not exactly that, what burden does it have? What does it have to show in order to be successful here? Well, Your Honor, I believe that they have to show that they're taking the pucket and claiming that there was a, it's kind of awkward because the context of error. You know, there was a breach. We believe that there was a clear and obvious breach, that there was a reasonable probability the court would have done something different. And finally, that the fairness and integrity of the proceedings were impeded. And I don't think the defense satisfies any of those four prompts. So, barring that, unless there are any further questions, we submit, I would submit on the, on the papers. Thank you very much. We'll give you one minute. Thank you. Your Honors, on prejudice, this is what Whitney says. A court may determine that the defendant's substantial rights were not affected if he could not possibly have received the bargain for benefit or if he receives the bargain for benefit. Now, neither situation applies here. Why not when the district judge says, I've looked at this man's criminal record. I've looked at his criminal background. And I think 46 months is just way too low. I'm going to impose a far more severe sentence. And that's after the judge received a memo from the government saying that a far more serious sentence would. He's focusing on the government, and I keep focusing on the probation officer. And they're all saying the same thing. Your Honor, in the context of alleged breaches of plea agreements, we look to what the government did before the court made up its mind. And here, what the government did before the court made up its mind was put in a memo which fully recited information already before the judge and which employed rhetoric, as Your Honor said, indicating that a longer sentence would be appropriate. Now, it's the larger context here. We have the defendant asking for 46 months. We have the probation office saying 46 months is appropriate. But actually, you might want to go higher because. Why didn't you object? If this was so important, why didn't you, having received on November 3, the raise came? Your Honor, it was an error not to object. But the review here is for plain error, and Puckett makes that clear. The question in Puckett was whether a forfeited claim of a government breach of a plea agreement is subject to plain error review. The Supreme Court said yes. The review here, there's no waiver here of the right. It's a forfeited claim, and it's subject to plain error. Now, Whitney found plain error on facts materially indistinguishable from here. Again, the government there went through the criminal history and said this person's a good thief. But I thought in Whitney, there was an oral, there wasn't a written contract involved. Isn't that a distinction? Factual difference without a distinction. Also, wasn't there a whole other issue in Whitney? There was a whole other issue, but the court said both of these issues are breaches, the court said, and it was very clear to say that. Now, here the promise. Well, Whitney's exactly the same except for its differences. Pardon me, Your Honor. There were two things that the government did in Whitney. And as to prejudice, doesn't it matter that there were two things? No, because the court in Whitney said that the prejudice was in two ways, and it looked at the two breaches. And it said, taking the variable nature of sentencing into account, it is likely that the government's breach in implicitly arguing for a harsher sentence rather than unequivocally expressing its preference for a low end deprived Whitney of an important consideration relevant to the determination of a sentence and resulted in a higher sentence. We have the same fact pattern here. We don't know what Judge King would have done if the government had not put in the sentencing memo when it did put in the sentencing memo. So should we issue an opinion that says that these types of plea agreements are void as against public policy because they prevent the district judge from having unfettered access to the benefit of the adversarial system, which theoretically produces the truth? It's not the plea agreement that's void, Your Honor. It's what the government did in the sentencing memo that breached the plea agreement. But what you're really arguing for is that the government should sign off on the plea agreement that says we stipulate under 11C1C to 46 months, and it can say no more. Your Honor, no one forced the government to sign this plea agreement. It entered it freely. Are you saying that? Why am I saying that? That's what I'm trying to say. Are you saying that? That's the distinction I was trying to draw earlier. This is not the normal case. No, no. But are you saying that if they sign an agreement like this, that they essentially have to say we agree to 46 months, please give us 46 months period at the end? They can say other things, Your Honor, as long as those other things do not implicitly suggest a longer term. Suppose what they had said was this person did XYZ, all the same XYZs. This may look like a lot of bad acting, but in fact, the government believes that the 46 months is a very good idea because he had a bad upbringing and so on. That would be a total different case, Your Honor. Even if they went through all the same facts? Yes. And if they say, if their point of doing that is to say he deserves a lower sentence or rather one in line with the plea agreement, we'd have a totally different case. But what the government did here was lay everything out as a reason for giving implicitly a higher sentence. Why? He has an extensive string of crimes. He flouts the law. He shows no signs of stopping. Here we have the probation office saying 40- All of which was already in the PSR. Again, Your Honor, to clarify, that's exactly the same case in Whitney. Everything was in the PSR. And the fact the government harped on it after making a promise to urge the low end was the breach. But does it matter if it's the probation officer who's telling the judge, this guy flouts the law? No. He's got 15 criminals. Probation office can do whatever it wants, Your Honor. It's not a party to the plea agreement. So I guess we're back to the prejudice question. How did the government prejudice your client when the probation officer had already said it? Because it's not simply what in the- it's not just what the probation officer said. The government said what was in the PSR and then you are- Doesn't it matter somewhat that in Whitney it was an oral statement? And that the- if you have one written document- you have two written documents instead of one written document, it's hard to see why that makes a big difference. If the government is standing up there harping on stuff and repeating it, that seems like a different thing. I'm not sure. Because in Whitney, the comment was rather brief. And it was at sentencing. I think the prejudice here might be even greater because it's not just a brief remark at the call- at the sentencing hearing. It's a written submission given to the judge a month before sentencing. I'm not so sure that that makes a difference. All right. You are way beyond time. So thank you all very much. In the case of United States v. Gonzalez, Aguiar is submitted.
judges: Berzon, Tallman, Smith